CHUTZ, J.
Plaintiffs-appellants, Gregory Arrington and his wife, Clarnetta, appeal the trial court's actions of sustaining a dilatory exception raising the objection of prematurity and dismissing, without prejudice, their claims against St. Tammany Parish Hospital Service District No. 1 (STPH), based on the conclusion that the hospital's alleged negligent purchase, selection, and implementation of a medical device used postoperatively on Mr. Arrington fell within the purview of the Louisiana Medical Malpractice Act (LMMA), La. R.S. 40:1231.1 et seq., thus, requiring a decision of the medical review panel prior to the institution of their lawsuit against STPH. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
According to the allegations of the Arringtons' petition, Mr. Arrington was admitted to STPH on May 2, 2016 for lumbar surgery. Because he was at risk for deep vein thrombosis (DVT) due to his prior medical history, Mr. Arrington was postoperatively provided with an Alternating Leg Pressure (ALP) wrap medical device, which was manufactured by Currie Medical Specialties, Inc. (Currie).[1]
The Arringtons averred that during his admission at STPH, wraps from the ALP wrap medical device were placed on his *621 lower extremities bilaterally from his calves to his thighs. Based on information and belief, the Arringtons described the ALP wrap medical device as consisting of "bladders in sleeves that were secured around each leg and were attached to a compressor-type machine that pumped and suctioned air out of the bladders to mimic muscular activity and facilitate blood flow" in an effort to prevent DVT while Mr. Arrington was postoperatively bedridden. Also based on information and belief, the Arringtons claimed that on May 4, 2016, Mr. Arrington fell asleep with the ALP wrap medical device bladders around his legs and "awoke suddenly in excruciating pain in both of his legs due to over compressing by the ALP device." Mr. Arrington thereafter immediately attempted to extricate himself from "the crushing sensation," and while he was able to "get the right leg freed quickly... the left leg proved to be more difficult to remove." The Arringtons alleged that the difficulty of removal of the wrap bladder from the left leg "caused occlusions, vascular damage, [DVT,] and other disabling injuries to the left lower extremity."
After the Arringtons filed their petition for damages, STPH asserted a dilatory exception raising the objection of prematurity, contending that it was a qualified health care provider entitled to protection under the LMMA, including a decision by a medical review panel as a condition precedent to the institution of the Arringtons' lawsuit. Because no medical review panel decision had been rendered at the time the Arringtons filed their petition, STPH maintained it was entitled to dismissal of their claims against it. After a hearing, the trial court agreed and, on September 12, 2017, signed a judgment sustaining the exception of prematurity and dismissing, without prejudice, the Arringtons' claims against STPH. This appeal followed.
DISCUSSION
The dilatory exception of prematurity provided for in La. C.C.P. art. 926(1) questions whether the cause of action has matured to the point where it is ripe for judicial determination. Under the LMMA, a medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if the claim has not first been reviewed by a pre-suit medical review panel. See La. R.S. 40:1231.8.
When an exception of prematurity challenging the failure of the plaintiff to submit his claim to a medical review panel is raised, the defendant neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action, but instead asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. Dupuy v. NMC Operating Co., L.L.C., 2015-1754 (La. 3/15/16, 3), 187 So.3d 436, 438-39.
The burden of proving prematurity is on the moving party, in this case STPH, which must show that it is entitled to a medical review panel, because the allegations fall within the LMMA. See Dupuy, 187 So.3d 438-39. Where no evidence is presented at the trial of a dilatory exception of prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true; however, this latter principle applies only to properly pleaded material allegations of fact, as opposed to allegations deficient in material detail, conclusory factual allegations, or allegations of law. Bonilla v. Jefferson Par. Hosp. Serv. Dist. # 2 , 2016-0234 (La. App. 1st Cir. 12/28/16), 210 So.3d 540, 545, writ denied. 2017-0187 (La. 4/7/17), 215 So.3d 235 (citing *622 Hamilton v. Baton Rouge Health Care, 2009-0849 (La. App. 1st Cir. 12/8/10), 52 So.3d 330, 333 ).
The LMMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice," and all other tort liability on the part of the qualified health care provider is governed by general tort law. Dupuy, 187 So.3d 439. Because the LMMA's limitations on the liability of health care providers are special legislation, in derogation of the rights of tort victims, the coverage of the act should be strictly construed. Billeaudeau v. Opelousas Gen. Hosp. Auth., 2016-0846 (La. 10/19/16), 218 So.3d 513, 520. The issue of whether a claim sounds in medical malpractice is a question of law conducted under a de novo standard of review. See Rivera v. Bolden's Transp. Serv., Inc., 2011-1669 (La. App. 1st Cir. 6/28/12), 97 So.3d 1096, 1100.
Preliminarily, we note that the Arringtons do not dispute in this appeal that STPH is a qualified health care provider. Acknowledging that some of their claims "would relate to medical malpractice and ... that those claims would be subject to procedures required by the LMMA if [they] decided to pursue them," the Arringtons assert that the trial court erred insofar as its dismissal of their claims against STPH for its negligent selection, purchase, and implementation of the ALP wrap medical device that they emphasize are "claims against STPH in [its] administrative capacity." They suggest that the trial court was at liberty to determine which of their claims fall outside of the parameters of the LMMA.[2] See e.g., Blevins v. Hamilton Med. Ctr., Inc., 2007-127 (La. 6/29/07), 959 So.2d 440, 442 (where the *623 Louisiana Supreme Court reinstated trial court's determination, severing the three of plaintiff's allegations that sounded in general negligence and sustaining an exception of prematurity that dismissed the six remaining allegations that sounded in medical malpractice). The Arringtons urge that the trial court erred by dismissing their claims that STPH negligently selected, purchased, and implemented the ALP wrap medical device as subject to the pre-suit medical review panel decision required under the LMAA.
According to La. R.S. 40:1231.1(A)(13) of the LMMA:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
"Health care," in turn, is defined by the LMMA as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." La. R.S. 40:1231.1 (A)(9).
Under the plain language of these definitions, we find that the selection, purchase, and implementation of the ALP wrap medical device constitute acts performed or furnished by STPH, a qualified health care provider, for, to and, on behalf of Mr. Arrington during his postoperative recovery to avoid DVT, a risk for which he was assessed by his doctor. Thus, the allegations that STPH negligently selected, purchased, and implemented the ALP wrap medical device constituted "[h]ealth care" as defined by the LMMA. Moreover, the Arringtons have averred that STPH either committed an unintentional tort or a breach of contract based on that health care or based on the professional services of selecting, purchasing, and implementing the ALP wrap medical device, which was rendered, or which should have been rendered, by STPH to Mr. Arrington so as to fall within the definition of "[m]alpractice" set forth in the LMMA. Therefore, under the plain language of the malpractice and health care definitions provided for in the LMMA, the Arringtons' claims that STPH's negligent selection, purchase, and implementation of the ALP wrap medical device are medical malpractice claims subject to a pre-suit medical malpractice decision.
In addition, the Louisiana Supreme Court has set forth six factors to assist a court in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA. See Coleman v. Deno, 2001-1517 (La. 1/25/02), 813 So.2d 303, 315-16. These factors are:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient's condition;
(4) whether an incident occurred in the context of a physician-patient relationship, *624 or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
Id.
As explained by the Louisiana Supreme Court in Dupuy, a court analyzes the allegations of the petition under the Coleman factors to determine whether the allegations sound in medical malpractice. If the allegations sound in medical malpractice, the case must proceed in accordance with the protocol set forth in the LMMA. If, on the other hand, the allegations sound in general negligence, the case should proceed under general tort law. See Dupuy , 187 So.3d at 439.
Applying the Coleman factors to the allegations of fact set forth in the Arringtons' petition, we likewise conclude that any liability STPH has for its selection, purchase, and implementation of the ALP wrap medical device sounds in medical malpractice. We note that we do not consider the sixth Coleman factor because there is no allegation that STPH engaged in any intentional wrongdoing.
Under the first factor, i.e., whether the particular wrong is "treatment related" or caused by a dereliction of professional skill, the Arringtons contend that the wrong of which they complain does not require a review of Mr. Arrington's treatment since they are challenging STPH's administrative decision in selecting, purchasing, and implementing the medical device, which they characterize as ministerial services. Relying on Billeaudeau, 218 So.3d at 523, the Arringtons insist that the selection, purchase, and implementation of the medical device did not directly relate to any specific patient's particular treatment.
In Billeaudeau , the plaintiffs brought suit against a hospital for injuries arising from the medical malpractice of a doctor who was an independent contractor working in the hospital's emergency department. Along with the malpractice claims, the plaintiffs specifically alleged that the hospital was negligent in credentialing the doctor. In its application of the Coleman factors, the Billeaudeau court noted that whether a particular wrong should be considered inherently "treatment-related" is a factor that can be artfully argued either way, see Bonilla, 210 So.3d at 550 (citing on Billeaudeau, 218 So.3d at 523 ), but ultimately concluded that the decision to hire a physician in and of itself is administrative and does not directly relate to the treatment of any given patient or involve a dereliction of professional skill. Id. The act of credentialing a physician, which merely allows access to the hospital, does not thereafter dictate to that physician how to practice any aspect of medicine once he or she is credentialed. Bonilla, 210 So.3d at 550.
We do not have before us a claim for negligent credentialing. Here, it is undisputed that it was because Mr. Arrington was at risk for DVT that the ALP wrap medical device was furnished to him. STPH's selection, purchase, and implementation of the ALP wrap medical device necessarily required sufficient efficacy to conform to the physician's orders for Mr. Arrington's use of the device as well as Mr. Arrington's particular needs as a patient at risk for DVT, which are considerations interconnected with Mr. Arrington's medical treatment.
The decision of which ALP wrap medical device a hospital selects, purchases, and implements is sufficiently distinguishable from a hospital's choices in furnishing a *625 bed, see Blevins, 959 So.2d at 446, or a wheelchair, see Williamson v. Hosp. Srvc. Dist. No. 1 of Jefferson, 2004-0451 (La. 12/1/04), 888 So.2d 782, 789-90, as well as its failure to furnish emergency power to maintain life support systems, see Lacoste v. Pendleton Methodist Hosp., LLC, 2007-0008 (La. 9/5/7), 966 So.2d 519, 525-26, for which the Louisiana Supreme Court has determined health care providers are liable in ordinary negligence. An ALP wrap medical device is not medical equipment distributed to all patients or that exposes every patient admitted into the facilities, as well as visitors at the facilities, to the risk of harm that Mr. Arrington has alleged he sustained. Whether an ALP wrap medical device provides the requisite efficacy to conform both to the orders of a physician, who has determined that a patient is at risk for DVT (or other medical conditions) and requires the use of the medical device, as well as to the particular needs of the at-risk patient are concerns tethered to the patient's medical treatment.
Additionally, there is a clear utilization of professional skill in the selection, purchase, and implementation of an ALP wrap medical device in that, to ensure efficacy of the device, input from the physician as to his or her orders and the at-risk patient's condition is necessary. Thus, we conclude that STPH's selection, purchase, and implementation of the ALP wrap medical device constituted decisions made in conjunction with Mr. Arrington's treatment as a patient at a higher risk for DVT postoperatively and, thus, under the first Coleman factor, favors a finding that these claims by the Arringtons fall within the ambit of the LMMA.
We turn next to second Coleman factor: whether the wrong requires expert medical evidence to determine if the appropriate standard of care was breached. Mindful that the Arringtons have averred "[on] information and belief" that the malfunction of the ALP wrap medical device was the cause of the injuries to Mr. Arrington's lower left leg, clearly expert medical testimony is required to demonstrate causation. The more difficult inquiry is whether medical expertise is needed to explain to the trier of fact whether a hospital was negligent in selecting, purchasing, and implementing a particular ALP wrap medical device. The Arringtons suggest that non-medical technical expertise is all that may be needed. But this overlooks the interdependency of the physician's medical order for the use of an ALP wrap medical device for an at-risk patient, the at-risk patient's needs, and the particular device selected. Without medical expertise to explain the correlations between the medical order, the at-risk patient's needs, and the selected choice of device, the trier of fact will be unable to determine the efficacy of the hospital's selection, purchase, and implementation of the ALP wrap medical device. Therefore, STPH's decision-making in its selection, purchase, and implementation of the ALP wrap medical device requires expert medical evidence to determine whether the appropriate standard of care was breached.
As to whether the pertinent act or omission involved assessment of the patient's condition, the Arringtons urge that there is no need to make any particularized assessments of a patient's condition in selecting, purchasing, and implementing the ALP wrap medical device other than "to make the decision to strive for the general prevention of circulatory complications in surgery patients." We disagree. Without assessments of at-risk patients' conditions, the general prevention of circulatory complications in those patients simply cannot occur. Whether a particular ALP wrap medical device vis-a-vis another *626 ALP wrap medical device better serves the needs of the physicians ordering its use for at-risk patients and the scope of the various at-risk patients' conditions require assessments of the medical conditions of those requiring use of the device. The third Coleman factor favors finding that the selection, purchase, and implementation of an ALP wrap medical device falls within the ambit of the LMMA.
The fourth Coleman factor is whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform. Clearly, without a physician's order of the use of an ALP wrap medical device, a patient will not have occasion to utilize it. Although the selection, purchase, and implementation of the ALP wrap medical device is not dependent on a particular patient's use, which ALP wrap medical device to select, purchase, and implement is a decision that requires physician input to ascertain whether it will comply with physicians' orders and patients' needs. This factor favors finding STPH's decision regarding which ALP wrap medical device to select, purchase, and implement is within the scope of the LMMA.
We find the fifth Coleman factor, whether the injury would have occurred if the patient had not sought treatment, also favors STPH. It is axiomatic that not every patient who is admitted into STPH for surgery is required to use an ALP wrap medical device. And it is also apparent that not every event in an at-risk patient's life will require use of an ALP wrap medical device. Clearly, the injury would not have occurred absent Mr. Arrington's consent to have the lumbar surgery at STPH.
The Arringtons ask that we distinguish the hospital's decision to select, purchase, and implement the ALP wrap medical device from "any wrong that a patient suffers in a hospital," which they acknowledge generally would not occur if the patient had not first entered the facility. They urge that the decision of the choice of ALP wrap medical device a hospital provides to at-risk patients does not directly relate to the patient's treatment or involve a dereliction of professional skill and, therefore, the fifth Coleman factor should favor finding their administrative decision-making claims sound in ordinary negligence. But as we have already concluded, there is a nexus between the selection of the ALP wrap medical device and the orders of the physicians who decide the device is needed for their patients as well as the particularized needs of the individual at-risk patients.
The selection, purchase, and implementation of an ALP wrap medical device is not akin to the selection, purchase, and implementation of a hospital bed, see Blevins , 959 So.2d at 446-47, or a wheel chair, see Williamson, 888 So.2d at 791, or the lack of emergency power needed to maintain life support systems, see Lacoste, 966 So.2d at 528-29, which are instances where no particularized medical knowledge regarding the patients' medical conditions is needed. Based on our application of the relevant Coleman factors, we find the Arringtons' claims for negligent selection, purchase, and implementation of the ALP wrap medical device sound in medical malpractice. See Dupuy, 187 So.3d at 440-45, (applying the Coleman factors to plaintiff's allegations that the health care provider failed to properly maintain and service equipment utilized in the sterilization of surgical instruments, the court concluded that the claims fell within the ambit of the LMMA).
Accordingly, under both the plain language of the definitions of health care and medical malpractice set forth in the LMMA and an application of the Coleman *627 factors, we conclude that the Arringtons' claims of negligent selection, purchase, and implementation of an ALP wrap medical device by STPH require a pre-suit decision from the medical review panel in accordance with the LMMA. Therefore, the trial court correctly sustained the exception of prematurity and dismissed the Arringtons' claims against STPH without prejudice.
DECREE
For these reasons, we affirm the trial court's judgment. Appeal costs are assessed against plaintiffs-appellants, Gregory and Clarnetta Arrington.
AFFIRMED.

The Arringtons also named Currie as a defendant in this lawsuit, raising products liability claims against the ALP wrap medical device manufacturer. After the dismissal of STPH from the lawsuit, Currie removed the matter to federal court based on allegations of diversity of citizenship between the parties. Although a state appellate court generally cannot proceed any further after the removal of a case to federal court, see Ward v. Resolution Trust Corp., 972 F.2d 196 (8th Cir. 1992), cert. denied, 507 U.S. 971, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993), citing 28 U.S.C. § 1446(d), because the only appealable issue in the judgment under review from the Arringtons' point of view is the dismissal of their suit against STPH (a Louisiana citizen) on an exception of prematurity pursuant to an order of appeal entered prior to removal, we find that we have jurisdiction over the appeal. See Scott v. American Tobacco Co., Inc., 97-1973 (La. App. 4th Cir. 10/8/97), 700 So.2d 1324, 1325.

We disagree with the Arringtons that "brevity" supports their failure to list "each and every allegation in the [p]etition which should have been severed[,]" as well as their assertion that a remand to the trial court to determine "the allegations that should have been severed" is warranted. The Arringtons' claim that STPH is liable to them for the unreasonable risk of harm presented by the malfunction of the ALP wrap medical device is merely a conclusion without any facts suggesting that STPH, as owner or custodian, knew or in the exercise of reasonable care should have known of the defect that caused the damage as required under La. C.C. art. 2317.1 so as to impose liability. Similarly, the Arringtons have simply averred that STPH is liable to them in products liability for the failure to warn, without setting forth any factual allegations from which to conclude that STPH either manufactured the ALP wrap medical device so as to be a manufacturer under La. R.S. 9:2800.53(1) or qualified as a seller under La. R.S. 9:2800.53(2). And while the Arringtons claimed that STPH breached an express warranty, no facts regarding the scope of the guarantee or that it was voluntarily made by STPH and extended to Mr. Arrington have been alleged. See Hopkins v. American Cyanamid Co. , 95-1088 (La. 1/16/96), 666 So.2d 615, 623 (an express warranty is a guarantee that the manufacturer or seller of a good voluntarily undertakes and extends to its customer). Lastly, the Arringtons' suggestion that STPH's liability for the improper maintenance of the ALP wrap medical device sounds in ordinary negligence is without merit because the act of improperly maintaining the medical device, which is an unintentional tort or breach of contract based on health care or professional services rendered by a health care provider, necessarily arises from acts or omissions in the supervision of STPH employees, i.e., health care providers, and, therefore, constitutes malpractice as defined under La. R.S. 40:1231.1(A)(13) of the LMMA. Because "[a] plaintiff cannot control the progress and procedure of his claim by semantically designating one capacity of two or more belonging to the defendant as the desired one" in order to avoid the medical review panel procedure, see Cashio v. Baton Rouge Gen. Hosp. , 378 So.2d 182, 184 (La. App. 1st Cir. 1979), we limit our review of the propriety of the trial court's dismissal of the Arringtons' administrative claims, i.e., STPH's alleged negligent selection, purchase, and implementation of the ALP wrap medical device. See Bonilla , 210 So.3d at 545.